UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MAXIT DESIGNS, INC., a
California corporation,

        Plaintiff,

   v.

COVILLE, INC., a North
Carolina corporation,

        Defendant.

NO. CIV. S-05-1040 WBS DAD

MEMORANDUM AND ORDER RE:
MOTION TO COMPEL ARBITRATION
AND DISMISS OR STAY

----oo0oo----

Defendant seeks to compel arbitration and also moves to dismiss, or, in the alternative, to stay this litigation pending arbitration of plaintiff's claims. Jurisdiction is based on the diversity of citizenship of the parties. See 28 U.S.C. § 1332.[1]

///

---

[1] Defendant objects to the late filing by plaintiff of the opposition to defendant's motion. Defendant was not prejudiced by plaintiff's late filing, as the court finds defendant was able to prepare an adequate reply. The court has an interest in deciding cases on their merits and not on technicalities. Olvera v. Giurbino, 371 F.3d 569, 573 (9th Cir. 2004).

1

I. <u>Factual and Procedural Background</u>

Defendant seller and plaintiff buyer entered into a series of contracts for the purchase of fabric.  Plaintiff alleges that the first contract between the parties was entered into in 1987 or 1988.  (Def.'s Notice of Removal Ex. 1 (compl.) ¶ 8).  Plaintiff's counsel stated at the hearing on this matter that plaintiff and defendant entered into hundreds of contracts over the course of sixteen years.  On October 19, 2004, defendant filed a "Demand for Arbitration" with the American Arbitration Association.  (Def.'s Mem. in Supp. of Mot. to Compel Arbitration Ex. 2).  The demand states that:

> Claimant Coville, Inc. ('Coville') hereby demands arbitration of a controversy between it and respondent Maxit Designs Inc. ('Maxit') arising out of invoice numbers 22369, 22376, 22570, and 22594 dated June 10, 2004, June 10, 2004, July 30, 2004 and August 10, 2004 respectively.  Coville and Maxit have entered into several contracts, including contract no. 970384, 981251, and 990197.

(<u>Id.</u> Ex. 2 at 1).  Defendant's demand sought $56,143.05 plus interest due to plaintiff's nonpayment for defendant's goods.  (<u>Id.</u> Ex. 2 at 2).  The arbitration hearing was scheduled to take place in New York City.

Subsequently, on April 20, 2005, plaintiff filed in state court a complaint alleging three causes of action: "misrepresentation/fraud in the inducement and/or fraud," unfair business practices pursuant to California Business and Professions Code § 17200 <u>et seq.</u>, and breach of contract.  (Def.'s Notice of Removal Ex. 1 (compl.)).  Plaintiff's complaint states that plaintiff entered into an agreement in 1987 or 1988 to buy from defendant fabric for plaintiff's "Headgator" product.  (<u>Id.</u> Ex. 1 ¶ 8).  Plaintiff alleges that a material part of the

1  agreement was defendant's promise to sell to plaintiff at the
2  lowest price available to any customer.  (Id. Ex. 1 ¶ 9).
3  Plaintiff further alleges that it learned in July 2004 that it
4  was not receiving the lowest price and had therefore been
5  overcharged.  (Id. Ex. 1 ¶ 10-11).  Finally, plaintiff alleges
6  that defendant's fabric was defective and that plaintiff's
7  reputation has been damaged.  (Id. Ex. 1 ¶ 12).  Plaintiff's
8  prayer for damages seeks, inter alia, $337,087.92 for overpayment
9  and additional damages for injury to its reputation.  (Id. Ex. 1
10 at 10).

11         Defendant submits three contracts executed by the
12 parties to show that these allegations must be arbitrated.
13 (Def.'s Mem. in Supp. of Mot. to Compel Arbitration Ex. 1).  The
14 first contract, numbered 970384, was for 12,643 yards of "solid
15 jersey: 924 polypropylene/94 lycra."  The first contract was
16 executed by the parties on May 22, 1997.  (Id. Ex. 1 at 1).  The
17 second contract, numbered 981251, was executed by Coville on June
18 3, 1998 and executed by Maxit at an uncertain time, and was for
19 43,100 yards of "double napped anti-microbial lycra jersey: 93%
20 polypropylene/7% lycra."  (Id. Ex. 1 at 3).  The third contract,
21 numbered 990197, was executed by Coville on May 17, 1999 and by
22 Maxit at an uncertain time, and was for 80 yards of "napped am p2
23 lycra jersey: 91% polyolefin/9% lycra."  (Id. Ex. 1 at 5).

24         Plaintiff contends that, of the contracts that
25 defendant submits, only the May 17, 1999 contract is relevant to
26 plaintiff's causes of action.

27         Each of the submitted contracts contains eighteen
28 numbered provisions, three on the front and fifteen on the back.

3

The numbered provisions on the front include one titled "contract acknowledgment" and another titled "arbitration." (Id. Ex. 1). The "contract acknowledgment" provision provides that the contract

> shall become binding and enforceable against the Buyer either (a) when signed or accepted in writing by the Buyer . . ., or (b) when signed and delivered by the Seller to the Buyer unless the Buyer gives the Seller written notice of objection to its contents within ten days after receipt hereof, or (c) when Buyer has paid for or accepted delivery of the whole or any part of the goods herein described, or (d) when Buyer has given either delivery dates, shipping instructions, instructions to bill and hold, instructions as to colors, designs, patterns, specifications or assortments, as to all or any part of the goods herein described.

(Id. Ex. 1). The provision titled "arbitration" states:

> Any controversy or claim arising out of or relating to this contract, any modification thereof, or any interpretation or breach thereof, shall be settled by arbitration in the City of New York, before and under the rules then obtaining of the General Arbitration Council of the Textile Industry or the American Arbitration Association as the party first referring the matter to arbitration shall elect, all subject to and in accordance with the conditions on the reverse side hereof.

(Id. Ex. 1). The sixth paragraph of the agreement, contained on the reverse side, contains further conditions of any arbitration proceeding, such as that any dispute shall be heard by three arbitrators, that the law applied shall be that of the state of New York, and that the arbitrators shall not have the authority to modify express contract provisions. (Id. Ex. 1).

      None of the contracts that defendant presents the court was at issue in the New York arbitration. The contracts defendant presents the court are from 1997, 1998, and 1999. The contracts upon which defendant brought plaintiff to arbitration are all from 2004. (Def.'s Mem. in Supp. of Mot. to Compel Arbitration Ex. 2 (Demand for Arbitration) at 1).

4

1  Arbitration has gone forward. "The arbitration
2  hearings were held on Wednesday, July 13, 2005 and Thursday July
3  14, 2005. The testimony of both sides and introduction of all
4  exhibits was completed and, subject to the mailing of certain
5  records to the arbitrators, the hearings have been concluded."
6  (Duboff Decl. in Supp. of Def.'s Opp'n to Pl.'s Application to
7  Enlarge Time ¶ 4). "The deadline for the arbitrators to make a
8  decision is August 15, 2005." (Duboff Decl. in Supp. of Reply to
9  Pl.'s Opp'n to Def.'s Motion to Compel Arbitration ¶ 7).

10  Attorney Michael Duboff, who represented defendant
11  Coville in the arbitration in New York, filed a declaration
12  stating that plaintiff's opening statement in the arbitration
13  addressed the issues of fraudulent inducement and the claim that
14  the 1987 or 1988 contract included an agreement that defendant
15  would provide plaintiff with the fabric at the lowest price
16  available. (Id. ¶ 4). Duboff does not present any documentary
17  evidence of the substance of plaintiff's oral opening statement
18  at the New York arbitration. Duboff's statement regarding the
19  content of plaintiff's oral argument before the arbitral body is
20  hearsay. Fed. R. Evid. 801(c).

21  Plaintiff opposes defendant's motion to compel
22  arbitration on the grounds that the operative contracts are an
23  oral agreement between the parties made in 1987 or 1988 and the
24  hundreds of separate contracts the parties have entered since.
25  (Pl.'s Opp'n to Mot. to Compel Arbitration at 1). Plaintiff
26  argues that the parties did not agree to arbitrate their claims
27  at the time of the oral contract. Plaintiff further argues that
28  the three contracts defendant presents the court are wholly

5

inadequate to require the court to compel arbitration and stay the case. Plaintiff argues that two of the three contracts defendant has provided do not concern the fabric used in the "Headgator," and thus are irrelevant. Further, plaintiff argues, an arbitration clause in one contract from May 1999 cannot serve to compel arbitration and stay plaintiff's claims when plaintiff's claims rest on sixteen or more years of dealings and hundreds of contracts.

II. Discussion

    A. Motion to Compel Arbitration

The standard that governs whether the court must compel plaintiff's claims to arbitration is governed by the Federal Arbitration Act. See 9 U.S.C. § 1 et seq. Title 9 U.S.C. § 4 ("§ 4") provides that a party may seek an order to compel arbitration from a district court where another party fails, neglects, or refuses to arbitrate.[2] Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)(emphasis in original). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the

---

[2] A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4.

agreement encompasses the dispute at issue." <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000).

In this case, the written agreements entered into by the parties in 1997, 1998, and 1999 do not represent the sum total of the contracts upon which plaintiff bases the present suit.  Plaintiff alleges that the parties entered into their first contract as far back as 1988, and it is clear from defendant's arbitration demand that the parties continued to have dealings through 2004.  Each contract that defendant submits limits the effect of the arbitration clause contained within it to "[a]ny controversy or claim arising out of or relating to <u>this</u> contract." (Mem. in Supp. of Def.'s Mot. to Compel Arbitration Ex. 1).  The court finds that all of plaintiff's claims cannot fairly be said to arise out of or relate to the contracts defendant has produced.  The contracts cover limited quantities of goods delivered by defendant to plaintiff in 1997, 1998, and 1999.  The contracts do not purport to be broad, global agreements that cover all dealings between the parties between 1988 and 2004.  Under these facts, the Federal Arbitration Act does not require the court to compel arbitration on plaintiff's claims.  <u>See</u> 9 U.S.C. § 4(providing that the party seeking to compel arbitration must show a <u>written</u> agreement to arbitrate the relevant issues).

However, the contracts defendant presents are sufficient to show that plaintiff's claims as they relate to those contracts must be arbitrated.  Therefore, any claims based on sales contracts numbered 970384, 981251, or 990197 must be submitted to arbitration.  <u>See</u> 9 U.S.C. § 4.

7

1         B. <u>Motion to Stay Pending Result of New York Arbitration</u>
2              Defendant moves the court to stay this case pending the
3  outcome of the arbitration in New York.  Defendant argues that
4  the risk of results inconsistent with those reached in the New
5  York arbitration justifies staying this action.
6              The trial court has the inherent power to control its
7  own docket and calendar.  <u>Landis v. N. Am. Co.</u>, 299 U.S. 248,
8  254-55 (1936).  In <u>Leyva v. Certified Grocers of California,
9  Ltd.</u>, 593 F.2d 857, 863 (9th Cir. 1979), the court held that some
10 claims at issue in the suit were subject to arbitration but that
11 others were not.  Thus, <u>Leyva</u> found that 9 U.S.C. § 3 did not
12 require the district court to grant a stay as to the claims not
13 subject to arbitration.  <u>Id.</u>  Nevertheless, <u>Leyva</u> held that
14 "sound reasons may exist in the case to support the district
15 court's determination to stay the action under the powers to
16 control its own docket and to provide for the prompt and
17 efficient determination of the cases pending before it."  <u>Id.</u>
18 <u>Leyva</u> showed a concern for judicial efficiency.

> It would waste judicial resources and be burdensome upon the
> parties if the district court in a case such as this were
> mandated to permit discovery, and upon completion of
> pretrial proceedings, to take evidence and determine the
> merits of the case at the same time as the arbitrator is
> going through a substantially similar parallel process.

23 <u>Id.</u> at 864.  In that case, the court found that the findings of
24 the arbitrator "may be of valuable assistance to the court in
25 resolving the [non-arbitrable] claims, even under the assumption
26 that the court is not bound and controlled by the arbitrator's
27 conclusion."  <u>Id.</u> at 863.
28             In this case, a <u>Landis</u> stay is not justified.  First,

8

the scope of the issues in this case is much broader than that of the issues being arbitrated in New York.  The New York arbitration bears on plaintiff's alleged nonpayment on four contracts entered into in 2004.  Plaintiff in this suit alleges fraud in the inducement, unfair business practices, <u>and</u> breach of contract.  Plaintiff makes these allegations in connection with all of the dealings the parties had with each other between 1987 or 1988 and 2004.

Defendant contends that plaintiff's allegation that a 1987 or 1988 contract required defendant to sell to plaintiff at the lowest price was argued at the arbitration.  However, the only evidence defendant brings forward to support this contention is Duboff's hearsay statement.  No documentary evidence, such as a transcript of the arbitration proceedings, has been provided the court.  The court finds the evidence of overlap between the arbitration and this case to be lacking and therefore not supportive of a an order staying this action.

Third, there is no prejudice to defendant in not granting a stay.  Defendant represents to the court that the arbitral body will issue its opinion within three weeks.  (Duboff Decl. in Supp. of Reply to Pl.'s Opp'n to Def.'s Mot. to Compel Arbitration ¶ 7).  Thus, even were this court to grant a stay under <u>Landis</u>, the stay would be of less than a month's duration.  This case arrived in federal court on May 25, 2005.  (<u>See</u> Notice of Removal).  There has not yet been a Federal Rule of Civil

Procedure 16 status conference yet,[3] and deadlines for the completion of discovery and submission of dispositive motions are therefore likely to be months away. There is no pressure on the litigants to immediately conduct discovery on issues that may be settled by the imminent decision in New York.

Fourth, the granting of a stay would not work to conserve judicial resources. Any overlap in the efforts of this court and the arbitral body will be minimal. According to defendant, the arbitral body is currently preparing a decision on the issues in that case. During the next few weeks, this court, in contrast, will be implementing a plan for the conduct of discovery and the timing of certain deadlines. See Fed. R. Civ. P. 16. The court will have more than enough time to rule on the effect of the arbitral body's decision.

Therefore, the court concludes that the concerns present in Leyva are not present here. A stay of proceedings in this action pending the result of the New York arbitration is not justified.

IT IS THEREFORE ORDERED that:

(1) defendant's motion to compel arbitration be, and the same hereby is, GRANTED, regarding any claims by plaintiff relating to contracts numbered 970384, 981251, and 990197;

(2) plaintiff's causes of action are STAYED to the extent that they rely on contracts numbered 970384, 981251, and 990197;

---

[3] The Rule 16 conference is scheduled for August 15, 2005, the same day that, according to defendant, the arbitrator's decision is due.

1         (3) in all other respects, except as provided in
2 paragraphs (1) and (2) above, defendant's motions to compel
3 arbitration and to stay be, and the same hereby are, DENIED.
4 DATED:  August 1, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

11