UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MAXIT DESIGNS, INC., a
California corporation,

        Plaintiff,

    v.

COVILLE, INC., a North
Carolina corporation,

        Defendant.

NO. CIV. S-05-1040 WBS DAD

MEMORANDUM AND ORDER RE: SECOND MOTION TO COMPEL ARBITRATION AND DISMISS

----oo0oo----

Plaintiff Maxit Designs, Inc. filed this lawsuit against Defendant Coville, Inc. to recover damages for fraud, unfair competition, and breach of contract.  Defendant moves to compel arbitration and to dismiss.  Jurisdiction is based on the diversity of citizenship.  See 28 U.S.C. § 1332.  Because all claims related to the contracts now submitted by defendant are governed by a valid arbitration clause, the court grants the motions.

///

///

1

I. <u>Factual and Procedural Background</u>

This dispute arises out of a series of agreements between the parties for the purchase of fabric by plaintiff from defendant. Plaintiff alleges that, in approximately 1987 or 1988, an oral agreement was reached between Henry Jordan, President of Coville, Inc. and Gail Ellison, President of Maxit Designs, Inc. regarding the price of fabric. (Compl. ¶ 8.) Plaintiff further alleges that this oral agreement was the first contract entered into by the parties. <u>Id.</u> Subsequently, over the course of the following sixteen years, the parties entered into dozens of written sales contracts. (Decl. of Christopher W. Brown in Supp. of Def.'s Second Mot. to Compel Arbitration Ex. 2.)

On April 20, 2005, plaintiff filed in state court a complaint alleging three causes of action: "misrepresentation/fraud in the inducement and/or fraud," unfair business practices pursuant to California Business and Professions Code § 17200 <u>et</u> <u>seq.</u>, and breach of contract. (Compl. ¶ 13-39.) The complaint states that plaintiff entered into an agreement in 1987 or 1988 to buy fabric from defendant for plaintiff's "Headgator" product. (<u>Id.</u> ¶ 8.) Plaintiff alleges that the substance of this original agreement was a promise by defendant to sell the fabric to plaintiff at the lowest price available to any customer. (<u>Id.</u> ¶ 9.) Plaintiff further alleges that it learned in July 2004 that it was not receiving the lowest price and had therefore been overcharged. (<u>Id.</u> ¶ 10-11.) Finally, plaintiff alleges that defendant's fabric was defective and that plaintiff's reputation has been

2

1  damaged.  (Id. ¶ 12.)  Plaintiff's prayer for damages seeks,
2  inter alia, $337,087.92 for overpayment and additional damages
3  for injury to its reputation.  (Id. at 10.)
4          On June 1, 2005, defendant filed a motion to compel
5  arbitration and dismiss plaintiff's claims.  (Def.'s First Mot.
6  to Compel Arbitration.)  In support, defendant submitted three
7  contracts executed by the parties (numbered 970384, 981251, and
8  990197) as examples of the standard written sales contract
9  between the parties.  (Def.'s First Mot. to Compel Arbitration
10 Ex. 1.)  Defendant's primary contention was that, under the
11 Federal Arbitration Act ("FAA"), the arbitration clause contained
12 in all of the written sales contracts mandated that the dispute
13 be arbitrated.  (Id. at 1-2.)  In response, plaintiff argued that
14 its complaint focused solely on a breach of the original oral
15 agreement, which did not contain any arbitration provision, and
16 therefore the dispute was not subject to arbitration.  (Pl.'s
17 Opp'n to Def.'s Mot. to Compel Arbitration at 2.)
18         On August 1, 2005, the court granted the motion to
19 compel arbitration for any claims based on the three sales
20 contracts 970384, 981251, and 990197, and denied the motion in
21 all other respects.  (Order Granting Mot. to Compel Arbitration
22 at 10:19-11:3.)  In essence, although the court granted the order
23 to compel arbitration for the very limited number of transactions
24 before it, it was reluctant to declare that all of the
25 transactions at issue between the parties were covered by such an
26 arbitration clause without having seen any of the other written
27 agreements between the parties.
28         Defendant now brings another motion to compel

3

arbitration and dismiss the action.  (Def.'s Second Mot. to Compel Arbitration.)  In support of this motion, defendant submits 71 additional sales contracts, allegedly executed by the parties, to further show that all of plaintiff's claims must be arbitrated.[1] (Decl. of Christopher W. Brown in Supp. of Def.'s Second Mot. to Compel Arbitration Ex. 2.)  Two of these contracts are signed by both representatives of both parties, while the remainder are unsigned.  (Id. at 1, 17.)  Defendant represents that these contracts constitute "all the contracts for the period of April 1995 to 2004 still at issue in this case."  (Def.'s Second Mot. to Compel Arbitration 2.)  As such, defendant argues that they constitute "written proof that each of the transactions still at issue is also covered by a written arbitration clause."  (Id. at 5.)

As with the three contracts covered by this court's previous order, plaintiff concedes that all 71 sales contracts are identical.  (Decl. of Christopher W. Brown in Supp. of Def.'s Second Mot. To Compel Arbitration Ex. 3 at 2:27-3:1.)  Each contract contains eighteen numbered provisions, with three on the front and fifteen on the back.  (Id. Ex. 2 at 1-2.)  The numbered provisions on the front include one titled "contract acknowledgment" and another titled "arbitration."  (Id. Ex. 2 at 1-2.)  The "contract acknowledgment" provision provides that the

---

[1] Plaintiff stated at oral argument that there are 82 contracts attached to Christopher Brown's declaration, but this court could find only 71.  The 148 page exhibit contains 74 two-page documents. One of these contracts, however, is contract 970384, on which this court previously granted a motion to compel arbitration, (Id. at 13-14,) and two of the contracts are annotated duplicates of the contract immediately preceding it. (Id. at 3-4, 17-18.)

4

contract:

> shall become binding and enforceable against the Buyer either (a) when signed or accepted in writing by the Buyer . . ., or (b) when signed and delivered by the Seller to the Buyer unless the Buyer gives the Seller written notice of objection to its contents within ten days after receipt hereof, or (c) when Buyer has paid for or accepted delivery of the whole or any part of the goods herein described, or (d) when Buyer has given either delivery dates, shipping instructions, instructions to bill and hold, instructions as to colors, designs, patterns, specifications or assortments, as to all or any part of the goods herein described.

(Id.). The provision titled "arbitration" states:

> Any controversy or claim arising out of or relating to this contract, any modification thereof, or any interpretation or breach thereof, shall be settled by arbitration in the City of New York, before and under the rules then obtaining of the General Arbitration Council of the Textile Industry or the American Arbitration Association as the party first referring the matter to arbitration shall elect, all subject to and in accordance with the conditions on the reverse side hereof.

(Id.) The sixth paragraph of the agreement, located on the reverse side, contains further conditions of any arbitration proceeding, such as that any dispute shall be heard by three arbitrators, that the law applied shall be that of the state of New York, and that the arbitrators shall not have the authority to modify express contract provisions. (Id.) The fourth paragraph of the agreement, also located on the reverse side, is titled "applicable law" and states that "[t]his contract is consummated in and governed by the laws of the State of New York." Id.

     Plaintiff opposes defendant's current motion to compel on several grounds. First, plaintiff argues that the majority of the sales "contracts" submitted by defendant are in fact not valid enforceable contracts, because they are not signed by either party and because they were induced by fraud. (Pl.'s

1  Opp'n to Def.'s Second Mot. to Compel Arbitration at 3:14, 6:4.)
2  Plaintiff contends that the unsigned "sales contracts" are merely
3  invoices probative of defendant's breach of the promise to sell
4  at the lowest price.  Id.  Second, plaintiff asserts that, even
5  if the individual sales contracts are valid and enforceable, the
6  only breach referenced in the complaint was that of the <u>original
7  oral agreement</u> to sell fabric at the lowest price, and thus the
8  written sales contracts are not at issue in this case. (Id. at
9  5:6-7.)

## II. Discussion

The Federal Arbitration Act provides that a party may seek an order to compel arbitration from a district court where another party fails, neglects, or refuses to arbitrate.[2] 9 U.S.C. § 1, 4.  Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985)(emphasis in original).  "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000).

---

[2] A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .

9 U.S.C. § 4.

A. <u>Existence of a Valid Arbitration Agreement</u>

"A party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit." <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960). Thus, whether a party has submitted to arbitration is a matter of contractual interpretation, and in deciding whether a party agreed to arbitrate a particular issue, courts should apply state-law principles that govern contract formation. <u>Id.</u>; See <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1955) (noting a singular exception, not applicable in this case, where an arbitration clause contains an explicit provision regarding the "arbitrability" of arbitration).[3]

1. <u>Choice of Law</u>

The parties do not dispute that all of the written sales contracts at issue contain a choice of law provision, stating that the contracts are "consummated in and governed by the laws of the State of New York." (Decl. of Christopher W. Brown in Supp. of Def.'s Second Mot. To Compel Arbitration Ex. 2 at 2.) Therefore, it falls upon this court to decide whether,

---

[3] Defendant cites numerous cases for the proposition that, under the FAA, federal law should govern whether a dispute should be heard in arbitration. (Def.'s Second Mot. to Compel Arbitration at 7:17-21). Defendant is correct that the FAA must govern "the <u>scope</u> of the arbitration clause." (<u>Id.</u>) (citing <u>Tracer Research Corp. v. Nat'l Envtl. Servs. Co.</u>, 42 F.3d 1292, 1294 (9th Cir. 1994) (emphasis added)). However, the threshold question of whether a valid arbitration agreement exists at all must be answered according to state contract law. <u>First Options</u>, 514 U.S. at 944 (citing <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 57 (1995); <u>Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 475-76 (1989)).

7

under New York law, a sales contract must be signed in order to be valid.

### 2. Validity of an Unsigned Contract

New York courts have iterated a "long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed, when it is evident that the parties intended to be bound by the contract." God's Battalion of Prayer Pentecostal Church, Inc., v. Miele Assocs., LLP, 6 N.Y.3d 371, 373 (N.Y. 2006). As long as there is "other proof that the parties actually agreed on [the writing]" there is no requirement of a signature. Crawford v. Merrill Lynch, Pierce, Fenner & Smith, 35 N.Y.2d 291, 299 (N.Y. 1974).

In this case, plaintiff has maintained an ongoing business relationship with defendant for the sale of fabric for close to twenty years. (Compl. ¶ 8.) Both parties agree that, during this entire period, every individual sales order was governed by an identical sales contract. (Decl. of Christopher W. Brown in Supp. of Def.'s Second Mot. To Compel Arbitration Ex. 3 at 2:27-3:2; Pls.' Opp'n to Def.'s Second Mot. to Compel Arbitration at 2:24-25.) These contracts contained the aforementioned arbitration provision, as well as provisions for payment, delivery, warranties and other aspects of the transactions. (Decl. of Christopher W. Brown in Supp. of Def.'s Second Mot. To Compel Arbitration Ex. 2 at 1-2.) Despite plaintiff's claim that the unsigned contracts were not binding or enforceable, it appears that throughout the parties' long relationship, plaintiff operated under the terms of the sales contracts without ever expressing an objection. (Id. Ex. 3 at

3:19-21.)

Moreover, it is significant that the first such sales contract, as well as several subsequent contracts, were signed by the parties, which undoubtedly indicates plaintiff's intent to be bound. (Id. Ex. 2 at 1, 13, 17; Def.'s First Mot. to Compel Arbitration Ex. 1.)  This court would find it difficult to believe that plaintiffs intended to be bound by those five particular signed contracts, but not the 68 identical unsigned contracts.

Finally, the "contract acknowledgment" provision in each of the sales contracts indicates that the agreement "shall become binding and enforceable against the Buyer . . . (c) when Buyer has paid for or accepted delivery of the whole or any part of the goods herein described." (Id. Ex. 2 at 1.)  Plaintiff admits that it accepted and paid for the fabric covered by each of these contracts without tendering written objection. (Id. Ex. 3 at 3:19-4:12.)

Even if the contracts are enforceable without a signature, plaintiffs cite the New York Uniform Commercial Code for the contention that the only term which can be enforced by the court is the term specifying the quantity of goods.[4]  (Pl.'s

---

[4]  (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

1  Opp'n to Def.'s Second Mot. to Compel Arbitration 4:8-9.)  The
2  case law and commentary to the statutory provision reveal that
3  this is not a correct interpretation of § 2-201.

4  The purpose of subsection (1) is simply to clarify
5  that, for relevant sales transactions, some minimal "writing" is
6  necessary to satisfy the Statute of Frauds, but that writing does
7  <u>not</u> need to contain all material terms of the contract.  <u>Thomaier
8  v. Hoffman Chevrolet, Inc.</u>, 410 N.Y.S.2d 645, 647-48 (N.Y. App.
9  Div. 1978).  As the Official Comment makes clear, "[t]he only
10 term which must appear is the quantity term which need not be
11 accurately stated but recovery is limited to the amount stated."
12 N.Y. UCC § 2-201, Official Comment ¶ 2.  Thus, as long as there
13 is some writing sufficiently indicating the existence of a
14 contract, the contract (and all of its terms) are valid.  The
15 language cited by plaintiff merely signifies that, <u>with regard to
16 the quantity term of the contract</u>, as represented in the writing,
17 a court may not enforce any amount "beyond the quantity of goods
18 shown in the writing."  N.Y. U.C.C. § 2-201(1).  For these
19 reasons, the court concludes that the unsigned sales contracts
20 are valid and enforceable.[5]

---

N.Y. U.C.C. § 2-201(1) (emphasis added)

[5] Plaintiff additionally contends that the "sales contracts were procured by fraud, and are therefore revocable with its [sic] terms not enforceable." (Pl.'s Opp'n to Def.'s Second Mot. to Compel Arbitration 6:4-5.)  It is well settled, however, that "if the claim is fraud in the inducement of the arbitration agreement clause itself . . . the federal court may proceed to adjudicate it.  But the statutory language [in the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." <u>Buckeye Check Cashing, Inc., v. Cardegna</u>, 126 S.Ct. 1204, 1208 (2006) (citing <u>Prima Paint Corp. V. Flood & Conklin Mfg. Co.</u>, 388 U.S.

10

1     B. <u>Scope of the Arbitration Agreement</u>

2            This fact, however, does not settle the matter, because
3 the court must now determine whether the arbitration agreement in
4 each of the written sales contracts submitted by defendant
5 "encompasses the dispute at issue." <u>Chiron</u>, 207 F.3d at 1130.
6 Plaintiff argues that this dispute centers only around a breach
7 of the <u>original oral agreement</u>, and that plaintiff "has no
8 complaint about COVILLE's performance of [the sales] contracts."
9 (Pl.'s Opp'n to Def.'s First Mot. to Compel Arbitration 2:9-10.)
10 This distinction, however, is unsupportable in law. <u>See</u> <u>Genesco</u>
11 <u>Inc., v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 846 (2d Cir. 1987) ("If
12 the allegations underlying the claims 'touch matters covered by
13 the parties' agreements, then those claims must be arbitrated,
14 whatever the legal labels attached to them.") (citing <u>Mitsubishi</u>
15 <u>Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 622
16 n.9, 624 n.13); <u>Drews Distrib., Inc. v. Silicon Gaming, Inc.</u>, 245
17 F.3d 347, 350 (4th Cir. 2001) (noting that a party may not be
18 allowed to "retroactively restrict or eliminate its contractual
19 obligation to arbitrate a dispute by fashioning a limited
20 complaint.").

21           Indeed, this court already ruled on this issue in its
22 August 1, 2005 order, when it held that the three contracts
23 presented by defendant were "sufficient to show that plaintiff's

---

28 395, 403-404) (quotations omitted)).  Therefore, the court does not reach this argument.

11

claims as they relate to those contracts must be arbitrated."[6] (Order Granting Mot. to Compel Arbitration at 7:24-26.) This ruling is the law of the case and governs the additional 71 contracts submitted with the current motion. Thus, any claims based on the 71 sales contracts attached to defendant's current motion must be submitted to arbitration. See 9 U.S.C. § 4.[7]

C. Motion to Dismiss

Having decided that plaintiff's claims must be submitted to arbitration, the court must decide whether to stay the proceedings or dismiss the action. A district court has the discretion to dismiss a proceeding when "the arbitration clause [is] broad enough to bar all of the plaintiff's claims." Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988); see Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) (finding that "the weight of authority clearly

---

[6] Plaintiff contends that this court's previous order precludes it from revisiting the issue. In that order, however, the court noted that the three contracts before it at that time did "not represent the sum total of the contracts upon which plaintiff bases the present suit." (Order Granting Mot. to Compel Arbitration at 7:4-6.) The 71 sales contracts currently before the court were not at issue under the previous motion, and thus they are not affected by the court's previous ruling.

[7] Defendant's motion additionally requests attorneys' fees. Defendant, however, has not properly noticed a motion for attorneys' fees pursuant to the Local Rules of the Eastern District. See E.D. Local Rule 54-293 (noting that motions for attorneys' fees must be filed within thirty days of an entry of judgment and are governed by Rule 78-230); E.D. Local Rule 78-230 ("[A]ll motions shall be noticed on the motion calendar of the assigned Judge or Magistrate Judge. The moving party shall file with the Clerk a notice of motion, motion, accompanying briefs, affidavits, if appropriate, and copies of all documentary evidence that the moving party intends to submit in support of the motion."). In addition, defendant indicated its intention to submit a formal motion at a later date. (Def.'s Second Mot. to Compel Arbitration at 10:5-6.) Therefore, the court will not address the issue at this time.

1  supports dismissal of the case when all of the issues raised in
2  the district court must be submitted to arbitration.").
3         This court's previous order was narrow in scope,
4  limited only to those three contracts before it.  At that time,
5  the court was not prepared to speak to "all dealings between the
6  parties."  (Order Granting Mot. to Compel Arbitration at 7:18.)
7  By contrast, defendant has submitted with the present order
8  contracts which cover all transactions between the parties from
9  1995 to 2004, and by admission of plaintiff's own expert, the
10 only relevant transactions occurred between 2001 and July, 2004.
11 (Pl.'s Disclosure of Expert Witnesses Ex. A at 4-6.)  Thus, all
12 claims raised in the complaint must be submitted to arbitration
13 and the complaint will be dismissed.[8]
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///

---

[8] It is worth noting that, even without the valid arbitration clause mandating dismissal, each written contract also contains a forum provision stating that "[t]he parties consent to the jurisdiction of the Supreme Court of The State of New York, an/or [sic] the United States District Courts located in the State of New York, whichever is first selected by the moving party, for all purposes. . . ."  (Def.'s First Mot. to Compel Arbitration Ex. 1 at 2.)  Because the parties have agreed to a particular forum, dismissal is also appropriate in order to give effect to the parties' contractual intent.

1    IT IS THEREFORE ORDERED that defendant's motion to
2 compel arbitration be, and the same hereby is, GRANTED; this
3 action is hereby ordered DISMISSED; and defendant's motion for
4 attorneys' fees is hereby DENIED, without prejudice to
5 defendant's right to properly move for attorneys' fees pursuant
6 to Local Rule 78-230.
7 DATED: September 24, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE